# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONA HERRING SMITH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:15-cv-02094-MHH** |
| | } | |
| **THE LIBRARY BOARD OF THE CITY OF HOMEWOOD and DEBORAH FOUT,** | } } } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Dona Herring Smith brings this case *pro se* against her former supervisor and employer, defendants Deborah Fout and the Library Board of the City of Homewood.  (Doc. 1). [1]  Ms. Smith brings claims against the defendants for retaliation under Title VII, disability discrimination under the Americans with Disabilities Act, age discrimination under the Age Discrimination in Employment Act, and denial of her rights under the Family Medical Leave Act.  (Doc. 1).  Ms. Smith also asserts a claim for defamation against Ms. Fout.  (Doc. 1, p. 10).  The defendants ask the Court to enter summary judgment on all of Ms. Smith's claims.  (Doc. 21).  The defendants also ask the Court to strike Ms. Smith's response to

---

[1] Ms. Smith filed this action *pro se*, but the Court appointed counsel to assist her in the limited task of responding to the defendants' motion for summary judgment.  (*See* Doc. 31).

their motion for summary judgment.  (Doc. 35).[2]  For the reasons stated below, the
Court grants the defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

Dona Herring Smith began working for the Homewood Public Library as a
library assistant in 1989.  (Doc. 1, pp 3, 15; Doc. 34, p. 1).  By the time of her
termination in 2014, Ms. Smith was the head of the library's children's department,
a position she had held since 2001.  (Doc. 1, ¶ 12).  Ms. Smith is over 40 years of
age and has "a debilitating physical disorder" that manifests itself as "flare-up[s],"
which make it difficult for her to walk.  (Doc. 1, ¶¶ 11, 26, 28; Doc. 22, p. 18).
Ms. Smith has been receiving treatment for this condition since 2013, and Ms. Fout
was aware of the condition.  (Doc. 1, ¶¶ 5, 26, 28).  Deborah Fout began serving as
Homewood Public Library's director in 2009, and as director, she supervised Ms.
Smith until Ms. Smith's termination.  (Doc. 22, p. 6).

Ms. Smith filed an EEOC charge of discrimination against Homewood
Public Library in June 2012 while she still was a library employee.  (Doc. 1, p. 15;
Doc. 22, p. 52).  Ms. Smith asserted that the library denied her a promotion based
on her age and gave the position to a younger employee.  (Doc. 1, p. 15; Doc. 22,

---

[2] Consistent with the status conference held on November 30, 2017, the Court denies the
defendants' motion to strike Ms. Smith's response.  (Doc. 34).  For the purpose of resolving the
defendants' motion for summary, the Court treats Ms. Smith's complaint as a verified complaint
and accepts the allegations therein as though they were presented in an affidavit.

p. 52).  This was Ms. Smith's only EEOC complaint while she worked at the library.[3]  After Ms. Smith filed her EEOC complaint, she alleges that Ms. Fout became upset with her and made comments like "I will not forget this," "[I] could hold a grudge for you filing the complaint," and "I knew you wouldn't win because I know how to write these things."  (Doc. 1, ¶¶ 15–16).  According to Ms. Smith, Ms. Fout "created an adversarial hostile working environment" because of the EEOC complaint.  (Doc. 34, p. 2).  Ms. Smith states that Ms. Fout issued written warnings to her for confrontations with other library employees, exercised more direct oversight of the children's department, and relieved Ms. Smith of certain managerial responsibilities including the hiring of children's department staff. (Doc. 1, ¶¶ 17–24, 37).

Ms. Fout issued written warnings to Ms. Smith on two occasions after Ms. Smith filed the EEOC charge.  (Doc. 22, pp. 20–22, 24–25).  In June of 2013, one year after Ms. Smith filed her EEOC charge, Ms. Fout counselled Ms. Smith for publically reprimanding a member of the library custodial staff in front of library patrons.  (Doc. 22, p. 24).  Ms. Fout acknowledged that Ms. Smith had reason to correct the employee, but, after soliciting feedback from employees with

---

[3] In her complaint, Ms. Smith also references "numerous internal complaints" that she made while employed by the library.  (Doc. 1, ¶ 14).  Ms. Smith does not indicate the number, nature, or basis for these complaints.  Ms. Smith filed a second EEOC charge of discrimination against Homewood Public Library after her termination and before filing this lawsuit.  (Doc. 1, pp. 14–16).

knowledge of the incident, Ms. Fout determined that the public and condescending nature of Ms. Smith's reprimand was unacceptable. (Doc. 22, pp. 24–25). Although this was Ms. Smith's first formal write-up, Ms. Fout indicated in the warning notice that Ms. Smith had previously received informal correction for the same type of behavior towards her co-workers. (Doc. 22, p. 25).

Ms. Fout issued a second written warning to Ms. Smith on July 14, 2014, two years following the EEOC charge. (Doc. 22, p. 20). On that occasion, Amanda Pierce, another children's department employee, had emailed Ms. Smith to express her dismay that Ms. Smith had publically reprimanded and intimidated her on three occasions in the preceding week. (Doc. 22, pp. 6–7, 12). Ms. Pierce copied Ms. Fout on her email. (Doc. 22, p. 12). Ms. Fout sent an email to Ms. Pierce, Ms. Smith, and Mary Eller, another children's department employee, setting a meeting with the recipients for 1:00 p.m. the next day to address Ms. Pierce's concerns. (Doc. 22, pp. 7, 14). Ms. Fout called Ms. Smith at her office the next morning to remind her of the meeting. (Doc. 22, pp. 7, 16). Ms. Smith said she could not attend because she had experienced a "flare-up" and needed to see a doctor. (Doc. 1, ¶ 26; Doc. 22 pp. 16, 18). Shortly after their phone conversation, Ms. Smith sent an email to Ms. Fout in which she expressed her frustration at the incident with Ms. Pierce and stated that she would not feel

prepared to deal with the matter until the conclusion of the library's summer reading program in two weeks' time. (Doc. 22, p. 18).

Ms. Fout wrote back emphasizing the importance of resolving the conflict quickly and advising Ms. Smith that, unless her doctor's appointment directly conflicted, Ms. Smith needed to attend the meeting. (Doc. 22, pp. 7, 18). Ms. Smith did not respond to Ms. Fout's email, and she did not attend the meeting that afternoon. (Doc. 22, pp. 7, 16). Ms. Fout wrote a memo recording the exchange. She characterized Ms. Smith's failure to attend the meeting as "deliberate insubordination." (Doc. 22, p. 16; Doc. 1, ¶ 27). Ms. Fout sent Ms. Smith a copy of the written warning and directed Ms. Smith to sign it and return it by July 18, along with any response Ms. Smith wanted to make. (Doc. 22, pp. 7, 22). Ms. Smith wrote Ms. Fout to say that she could not properly respond to the warning until after the summer program. (Doc. 22, pp. 21, 28).

The library's summer reading program concluded on July 24, 2017. (Doc. 22, p. 8). Ms. Smith had returned a signed copy of the warning on July 22, but had not made any further response to Ms. Pierce's and Ms. Fout's complaints. (Doc. 22, pp. 8, 21–22). On July 31, 2014, Ms. Fout issued a notice of "Contemplated Disciplinary Action" to Ms. Smith because Ms. Smith still had not responded to the July 14th incident. (Doc. 22, p. 30). The notice referenced Ms. Smith's habitual mistreatment of her co-workers and her failure to address this issue as the

basis for the contemplated action. (Doc. 22, pp. 30–31). In addition to the incident with Ms. Pierce, the notice cites seven separate instances in which Ms. Smith behaved in a confrontational or intimidating manner towards her coworkers. (Doc. 22, p. 31). Ms. Fout placed Ms. Smith on paid administrative leave pending the outcome of a hearing on the notice. (Doc. 22, p. 31). According to Ms. Smith, this suspension came a day after she had asked Ms. Fout about the possibility of taking FMLA leave to care for her father who had recently been hospitalized. (Doc. 1, p. 5).

As library director, Ms. Fout held a disciplinary hearing on August 6, 2014 that resulted in a decision to terminate Ms. Smith's employment with the library effective August 15, 2014. (Doc. 22, pp. 35–36). Ms. Fout based her decision in part on the testimony of Ms. Smith's co-workers. Ms. Smith states that Ms. Fout actively solicited negative testimonials from these persons during the disciplinary proceedings. (Doc. 1, p. 10). The library's notice of the decision to Ms. Smith lists a number of reasons for her termination including her "fail[ure] to treat Library employees with courtesy, consideration, respect and professionalism," her coercion or intimidation of library employees, and her insubordination. (Doc. 22, p. 35). Ms. Smith appealed the decision which, upon review, was upheld by an ad hoc committee of the Library Board, and then by the full board of trustees. (Doc. 22, pp. 38, 43, 47).

On December 3, 2014, Ms. Smith filed her second EEOC charge against the Homewood Public Library, claiming that, in deciding to end her employment, the defendants had discriminated against her on the basis of her age, her disability, and her prior EEOC complaint. (Doc. 1, pp. 14–16). The EEOC issued Ms. Smith a notice of dismissal and right to sue on August 20, 2015. (Doc. 1, p. 17). Ms. Smith then filed this action on November 18, 2015. (Doc. 1).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P.

56(c)(3).

## III. DISCUSSION

### a. MS. SMITH'S RETALIATION CLAIM

Ms. Smith claims that the defendants "intentionally discriminated against [her] in retaliation [for] her earlier EEOC complaint" in violation of Title VII. (Doc. 1, p. 7). Although, Ms. Smith states that this claim arises under Title VII, the record indicates that her original EEOC complaint — the protected activity that allegedly caused the retaliation — was based on age and disability discrimination. (Doc. 22, p. 52). Title VII does not cover either of these categories. *See* 42 U.S.C. § 2000e–2(a)(1) & (2) (prohibiting employment discrimination on the basis of race, color, religion, sex, or national origin). Because the Court liberally construes a *pro se* filing, the Court recognizes that Ms. Smith asserts a claim for retaliation in violation of the ADA and ADEA. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). But the framework for the Court's analysis of this claim is the same as if it had been a Title VII claim. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998).

Ms. Smith contends that there are genuine issues of fact regarding "the connection between the filing of the EEOC Complaint in 2012" and the defendants' efforts "to create an untenable working condition and to ultimately

amass sufficient notations in the Plaintiff's work file to mask the real intent of the Defendants – to retaliate for her filing the EEOC Complaint." (Doc. 34, p. 5).

Ms. Smith argues that Ms. Fout's comments about Ms. Smith's EEOC complaint and the fact that each of the disciplinary actions occurred after Ms. Fout knew of the complaint indicate that the defendants intended to retaliate against Ms. Smith. (Doc. 34, p. 3). The defendants argue that too much time separates Ms. Smith's EEOC complaint from Ms. Fout's written warnings to create an inference of retaliation. (Doc. 21–1, p. 7). The defendants also argue that Ms. Smith's disciplinary history and insubordination gave Ms. Fout and the Library Board legitimate cause to end Ms. Smith's employment. (Doc. 21–1, p. 8).

Both the ADA and ADEA prohibit employers from retaliating against employees for engaging in protected activity, which includes complaints of an employer's discriminatory practice which the employee believes in good faith to be unlawful. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a); *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001). A plaintiff may prove her retaliation claim through direct or circumstantial evidence that her employer retaliated against her because she engaged in protected activity. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n. 6 (11th Cir. 2001). "[D]irect evidence is evidence proving, without inference, that illegal reasons motivated an adverse employment action. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 n. 5

(11th Cir. 2016) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor, constitute direct evidence of discrimination.'" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (quoting *Wilson*, 376 F.3d at 1086.).

In the vein of direct evidence, the Court examines Ms. Fout's alleged statements in response to Ms. Smith's EEOC complaint: "I knew you wouldn't win because I know how to write these things," "I will not forget this," and "i [sic] could hold a grudge for you filing the complaint." (Doc. 1, ¶¶ 15, 16).[4] The first statement is not direct evidence because it does not relate to Ms. Fout's purported acts of retaliation. Whatever the statement indicates about Ms. Fout's attitude towards Ms. Smith's EEOC complaint, the comment cannot be linked with the defendants' later alleged retaliatory acts without certain inferences. The second and third statements indicate that Ms. Fout was negatively disposed towards Ms. Smith because of her EEOC complaint and suggest that Ms. Fout might remain so disposed for some time. But these statements require an inferential step to connect

---

[4] The Court may consider these statements against Ms. Fout because they are the statements of a party opponent offered against that party and therefore are not hearsay. *See* Fed R. Evid. 801(d)(2)(A). The Court also may consider Ms. Fout's statements in assessing Ms. Smith's case against the Library Board because Ms. Fout was the Board's agent with the authority to terminate library employees. (Doc. 21, ¶3; Doc. 22, p. 6). As statements made within the scope of Ms. Fout's employment relationship with the library, the Court may impute these statements to the Library Board. *See* Fed R. Evid. 801(d)(2)(D).

the statements to the purported retaliation: that in disciplining and eventually firing Ms. Smith, Ms. Fout was acting on the basis of her grudge. *Cf. Perry v. City of Avon Park, Fla.*, 662 Fed. Appx. 831, 837 (11th Cir. 2016). Although the statements are strongly suggestive of Ms. Fout's animus towards Ms. Smith, they are not direct evidence of retaliation.[5]

Without direct evidence of retaliation, the Court assesses the sufficiency of Ms. Smith's circumstantial case for retaliation under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) *overruled in part on other grounds Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006). Under that framework, a plaintiff first must establish a prima facie case. *Wilson*, 376 F.3d at 1087 (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir. 1997)). If the plaintiff succeeds, then the burden shifts to the employer to articulate a legitimate reason for the adverse employment actions taken. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). If the employer offers a legitimate reason, then the burden returns to the plaintiff to show by a preponderance of the evidence that the employer's legitimate reason is a pretext for discrimination. *Furcron*, 843 F.3d at 1310–1311 (citing *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)).

---

[5] The second statement is too vague. The third is not stated in the affirmative; had Ms. Smith alleged that Ms. Fout said "I will hold a grudge against you for filing the complaint" the record might produce a different analysis.

A plaintiff establishes a prima facie case of retaliation by showing that: "(1) [s]he engaged in statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). By filing an EEOC complaint based on age discrimination, Ms. Smith has shown that she engaged in activity protected by both the ADA and ADEA. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a). Under the second prong, an employer's action is considered materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Here, there is little doubt that a jury could find that the written warnings and eventual termination alleged by Ms. Smith might have dissuaded a reasonable worker from complaining of discrimination.[6]

---

[6] In passing, Ms. Smith references two other forms of retaliation by the defendants. First, Ms. Smith argues that the defendants retaliated against her by denying her "the benefit of any yearly evaluations or appraisals" after she filed her EEOC complaint. (Doc. 34, p. 3). Ms. Smith argues that this affected her employment because it "prevent[ed] her from learning of any issues in her performance and being able to address such issues." (Doc. 34, p. 3). The record contradicts Ms. Smith's assertion. The performance issues cited by the defendants are Ms. Smith's habit of confrontation with co-workers and her refusal to timely address these issue when asked to do so by Ms. Fout. (Doc. 21–1, p. 8). The record contains multiple notices that Ms. Fout sent to Ms. Smith, informing Ms. Smith of these issues. (Doc. 22, pp. 20–21, 24–25). The last notice bears Ms. Smith's acknowledgement and signature. (Doc. 22, pp. 21, 33). The warning notices indicate that both Ms. Fout and other library employees brought Ms. Smith's performance issues to her attention. (Doc. 22, pp. 12, 21, 24–25, 31). For that reason, the Court is not persuaded that the lack of annual reviews provides Ms. Smith with a tenable basis for her retaliation claims.

The question, then, is whether Ms. Smith provides evidence to support an inference that the defendants' actions were retaliatory responses to her EEOC complaint. At the first stage of the inquiry, the plaintiff can prove causation simply by showing "that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation marks omitted). Ms. Smith filed her first EEOC complaint alleging age discrimination in June of 2012. (Doc. 1, p. 15; Doc. 34, ¶ 7). More than a year elapsed before Ms. Fout issued a first written warning to Ms. Smith on July 15, 2013. (Doc. 22, p. 24). Standing alone, the temporal relation between the cause (the EEOC complaint) and its purported effect (the first warning) does not help Ms. Smith's case because the gap is too great to create an inference that the events are related. [7] *See Thomas v. Cooper Lighting, Inc.*, 506

---

Ms. Smith also argues that the defendants retaliated against her by "removing certain duties from Plaintiff including the ability to conduct hiring for Plaintiff's department and requirement [sic] Plaintiff's employees to report to Fout or other supervisors." (Doc. 1, ¶ 18). The record indicates that Ms. Fout possessed authority over personnel matters and supervisory authority over the children's department by virtue of her position as the director of the library. (Doc. 22, p. 6). Ms. Smith offers no explanation of or further factual support for this claim apart from the statement quoted above. She does not cite evidence of a situation in which Ms. Fout usurped a power that rightfully belonged to her (Ms. Smith). Apart from the disciplinary write-ups, the record does not contain evidence that Ms. Fout exercised her powers to the detriment of Ms. Smith's position. The lack of evidentiary support for this form of alleged retaliation is fatal to this retaliation theory.

[7] The record does not indicate precisely when Ms. Fout became aware of Ms. Smith's EEOC complaint, but in her complaint, Ms. Smith states that Ms. Fout began her write-up campaign "[i]mmediately following [Ms. Smith's] filing of the 2012 charge." (Doc. 1, ¶ 17). This indicates that Ms. Fout became aware of the complaint shortly after Ms. Smith filed it with the

13

F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be very close.") (internal citations and quotations omitted). The gap between the protected conduct and the alleged retaliation widens when one looks to the second written warning and the termination decision, both of which occurred more than two years after Ms. Smith filed her EEOC complaint. (Doc. 22, pp. 20, 35).

Ms. Smith also offers Ms. Fout's statements indicating that Ms. Fout became negatively disposed towards Ms. Smith as a result of the EEOC complaint. (Doc. 1, ¶¶ 15, 16). Ms. Fout's statements that she would not forget the complaint and that she could hold a grudge against Ms. Smith raise the possibility that Ms. Fout was simply waiting for an opportunity to retaliate under circumstances that would provide cover for her decision. The Court accepts this explanation for the delay because the Court must make all reasonable inferences in Ms. Smith's favor for purposes of this motion. In light of this evidence, and the plaintiff's light initial burden, Ms. Smith has established her prima facie case for retaliation.

---

EEOC on June 11, 2012. (Doc.22, p. 52). Therefore the Court uses the date of filing as the rough point of reference for assessing the lapse of time between Ms. Smith's protected activity and any acts that could be construed as retaliation. Because Ms. Smith does not provide a date for the statements made by Ms. Fout, the Court also assumes that these were made shortly after Ms. Smith filed her EEOC complaint. The Court considers this assumption reasonable because Ms. Smith's complaint lays out the events in rough chronological order, and the statements appear before the campaign of retaliation that Ms. Smith alleges in her statement of facts. (Doc. 1, ¶¶ 15–17).

Therefore, the burden shifts to the defendants to offer a non-retaliatory explanation for the actions they took against Ms. Smith.  To bear their burden, the defendants must offer legitimate reasons for their actions that "might motivate a reasonable employer," but the defendants do not have to prove that the proffered reasons were the actual motivation for the actions they took.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024, 1030 (11th Cir. 2000) (en banc)); *see also Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013).  The defendants have borne this burden because they offer plausible, lawful reasons for each adverse action taken against Ms. Smith.

The first written warning that Ms. Fout issued to Ms. Smith was based on the complaint of a member of the library custodial staff about the public reprimand that Ms. Smith had given her.  (Doc. 22, pp. 24–25).  Other library employees spoke to Ms. Fout expressing their concerns about this encounter.  (Doc. 22, p. 24).  In the warning, Ms. Fout articulates a non-discriminatory reason for her disciplinary action that reasonably relates to the underlying circumstances.  (Doc. 22, pp. 24–25).  The same is true for the second written warning which was based on a similar complaint about Ms. Smith from Amanda Pierce.  (Doc. 22, pp. 20–21).  In both instances, Ms. Smith's co-workers, not the defendants, raised the complaints that led to disciplinary action.  As for the defendants' decision to terminate Ms. Smith, they cite Ms. Smith's pattern of confrontational interactions

with co-workers and the deliberate insubordination she demonstrated by failing to address Ms. Fout's concerns about the incident with Amanda Pierce.  (Doc. 22, pp. 7–8, 16, 30–31, 35–36).  The defendants also note that Ms. Smith's pattern of behavior affected the morale of her fellow employees and that some of Ms. Smith's subordinates quit because of the treatment they received from her.  (Doc. 22, pp. 21, 30–31).

The defendants have offered legitimate reasons for their actions, and thus the burden shifts back to Ms. Smith to demonstrate that the defendants' reasons are a pretext for retaliation.  An employer's reasons are pretextual "if (1) the reasons were false and (2) retaliation was the real reason for the employment decision." *Mealing v. Ga. Dep't of Juv. Just.*, 564 Fed. Appx. 421, 427 (11th Cir. 2014) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  A plaintiff can show that the employer's lawful reason is pretextual "either directly by persuading the court that a discriminatory reason more likely than not motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, (1981)).  An employer's explanation is unworthy of credence if it displays "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008).  As the plaintiff, Ms.

Smith has "'[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (quoting *Pennington*, 261 F.3d at 1266.). Ms. Smith has not carried this burden.

The record here contains no such inconsistencies or contradictions. Ms. Smith's co-workers repeatedly complained about her conduct, and Ms. Smith was counselled more than once for her conduct. There is nothing in the record that suggests that Ms. Fout trumped up complaints about Ms. Smith's condescending treatment of her co-workers.

The fact that Ms. Fout's decision to fire Ms. Smith for cause was twice reviewed and upheld, first by an ad hoc committee of the library and then by the full library board further diminishes any potential inference of retaliatory intent. (Doc. 22, pp. 40, 42 – 43, 47). Ms. Fout was not a member of either review panel. (*See* Doc. 22, pp. 42, 47). Ms. Smith does not contend that the library board members harbored retaliatory motives or that the board members were aware of her EEOC complaint. Ms. Smith suggests that Ms. Fout imported her own retaliatory motives into the review proceedings by soliciting negative feedback from co-workers. (Doc. 1, ¶ 36). But Ms. Fout's decision to fire Ms. Smith was based in part on the repeated complaints of co-workers. (Doc. 22, p. 35). Given

this fact, it is unclear why it would be improper for Ms. Fout to place these complaints in the record.

Ms. Smith does not allege that the statements made by her co-workers were false. Ms. Smith's co-workers came independently to Ms. Fout to complain of their negative interactions with Ms. Smith. Ms. Smith has not offered evidence indicating that the complaints of her co-workers were unfounded. Ms. Fout's disciplinary write-ups are consistent with the supporting complaints and her response is not an obviously disproportionate reaction to these complaints. The defendants also offer evidence supporting their contention that Ms. Smith's response to Ms. Fout's concerns was delayed and half-hearted. (Doc. 22, pp. 16, 18, 22, 28, 33).

Ms. Smith does not offer comparators to discredit the defendants' proffered justifications for her termination. Although Ms. Smith contends that others who did not file EEOC complaints were not similarly disciplined, (Doc. 1, ¶ 39), she does not point to a co-worker who engaged in same type of misconduct without receiving the same sort of disciplinary response. The nearest Ms. Smith comes to naming a comparator is when she states that "Defendant Fout placed a write-up in Plaintiff's personnel file on August 31, 2012 concerning issues with a co-worker from July 2012 to the date of the write-up. Defendant Fout did not place a write-up in the co-worker's file the same date." (Doc. 1, ¶¶ 21, 22). Apart from Ms.

Smith's statement, the record does not contain evidence of an August 2012 warning, and it is not clear whether Ms. Smith is referring to one of the two written warnings noted in the record or whether she is referring to a separate incident.[8] But without more detail, the unnamed co-worker is not a useful comparator because the Court cannot assess whether this person was in fact similarly situated to Ms. Smith and whether there was any basis for the defendants' differing treatment. *See Gilbert v. Wal-Mart Stores, Inc.*, 2010 WL 11565278, at *7 (N.D. Ala. Jul. 30, 2010) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998), *modified in part*, 151 F.3d 1321 (11th Cir. 1998)).

Ms. Smith has not offered evidence indicating that retaliation was more likely than not the reason for her termination. The statements by Ms. Fout, on which Ms. Smith relies, raise the possibility that the defendants' proffered reasons may not be worthy of credence, but in the face of the evidence supporting the defendants' legitimate rationale, the board's review of the termination decision, and the lack of temporal proximity, Ms. Smith has not produced sufficient

---

[8] Ms. Fout's first written warning to Ms. Smith references a past instance of similar misconduct by Ms. Smith. (Doc. 22, p. 25). The warning, however, places this incident on May 19, 2012, before Ms. Smith filed her EEOC complaint. (Doc. 22, p. 25). The notice of disciplinary action provided by Ms. Fout to Ms. Smith references eight total instances of Ms. Fout's confrontational or intimidating behavior towards her co-workers, but none of them align with Ms. Smith's reference to a July 2012 incident. (*See* Doc. 22, p. 31). To the extent that Ms. Fout made formal notations of Ms. Smith's misconduct, the parties have produced evidence of only two. (Doc. 22, pp. 20–21, 24–25).

evidence to require submission of her retaliation claim to a jury.  Therefore, the Court grants the defendants' motion with respect to this claim.

### b. Ms. Smith's ADEA Claim

Ms. Smith claims that the defendants discriminated against her on the basis of her age when Ms. Fout issued warnings to her and when the library terminated her employment.  Ms. Smith was sixty-one years old when the defendants ended her employment with the library.  (Doc. 15, p. 1).  In her complaint, Ms. Smith states that "other employees that are younger than Plaintiff are not written up for similar acts."  (Doc. 1, ¶ 38).  The record also shows that Ms. Smith's replacement was thirty-one years old when the defendants hired her as the new head of the children's department.  (Doc. 21–1, p. 10, n. 1).  The defendants argue that they terminated Ms. Smith for cause and that her age played no role in their decision.

"The ADEA provides, in relevant part, that '[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting 29 U.S.C. § 623(a)(1)) (emphasis in *Gross*).  To qualify for the ADEA's protections, the plaintiff must have been at least forty years old at the time of the alleged

discrimination.  29 U.S.C. § 631(a).  The plaintiff's burden is to persuade the finder of fact "that age was a 'but-for' cause of the employer's adverse action." *Gross, Inc.*, 557 U.S. at 176.

Without direct evidence of age discrimination, Ms. Smith must rely on circumstantial evidence to sustain her claim.  The Court assesses a circumstantial case for age discrimination under the *McDonnell Douglas* burden shifting framework.  *Kragor*, 702 F.3d at 1308.  Initially, the plaintiff must establish her prima facie case by demonstrating:

> (1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected.

*Id.* at 1308 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999).  If the plaintiff makes the prima facie showing, then the burden shifts to the defendants to offer a non-discriminatory reason for their actions.  *Id.*  If the defendants discharge this burden, then the plaintiff must provide evidence showing that the defendants' reason is a pretext for age discrimination.  *Id.*

Ms. Smith was within the protected age range when she was terminated, she suffered an adverse employment action (termination), and her replacement was

roughly thirty years her junior. (Doc. 15, p. 1; Doc. 21–1, p. 12). The defendants do not contend that Ms. Smith was unqualified for the job, and the evidence in the record does not suggest that Ms. Smith's qualifications were an issue.[9] Thus, Ms. Smith has satisfied the elements of her prima facie case.

The defendants, then, must respond to Ms. Smith's prima facie showing with a legitimate, non-discriminatory reason for the adverse action. The defendants do so for the same reasons that they adequately responded to Ms. Smith's prima facie case for retaliation: the defendants contend that they fired Ms. Smith for cause, a reason that would motivate a reasonable employer, and they offer evidence to support the conclusion that such cause existed. (*See* pp. 13–14 *supra*; see also Doc 22, pp. 20–21, 24–25). Therefore, Ms. Smith must offer evidence showing that defendants' purported cause was not the real reason for her termination.

Ms. Smith does not point to evidence beyond her prima facie showing to support an inference that the defendants' proffered reasons are pretextual. Although her complaint includes an allegation that "[o]ther employees that are younger than Plaintiff are not written up for similar acts," Ms. Smith again fails to offer a relevant comparator for consideration. (Doc. 1, ¶ 38). Specifically, Ms.

---

[9] To the extent that Ms. Smith must introduce evidence that she was qualified for her job, her lengthy tenure with the library, more than a decade of which she spent as the head of the children's department, suggests that she had the ability to perform the essentials of her job. (Doc. 1, ¶¶ 11, 12; Doc. 22, p. 33).

Smith has not submitted evidence that a younger employee committed similar misconduct without receiving the same disciplinary response from the defendants. Standing alone, the fact that the defendants replaced Ms. Smith with someone younger does not inevitably create an inference of age discrimination; if it did, then every prima facie case for age discrimination would survive the *McDonnell Douglas* inquiry. Therefore, Ms. Smith has failed to create a genuine issue of fact on her claim for age discrimination, and the Court grants the defendants' motion with respect to this claim.

### c. MS. SMITH'S ADA CLAIM

Ms. Smith claims that the defendants discriminated against her on the basis of her disability when they refused her request for a reasonable accommodation. (Doc. 1, p. 8). Ms. Smith contends that she requested an accommodation when she informed Ms. Fout that she would not attend the meeting scheduled to discuss the incident with Ms. Pierce because she (Ms. Smith) was having a flare-up and needed to see a doctor. (Doc. 1, ¶¶ 26, 27). Ms. Smith argues that Ms. Fout denied her a reasonable accommodation when she deemed Ms. Smith's absence from the meeting insubordinate and later cited this insubordination as a reason supporting Ms. Smith's termination. (Doc. 1, ¶¶ 27, 41). The defendants dispute whether Ms. Smith suffered from a disability covered by the ADA and whether Ms. Smith informed them of this disability. (Doc. 21–1, p. 14). Additionally, the defendants

contend that even if Ms. Smith has created genuine issues about these elements of her ADA claims, she has failed to show that the defendants denied her a requested accommodation. (Doc. 21–1, p. 15).

The ADA, in relevant part, prohibits covered employers from discriminating against "qualified individual[s] on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). An employer's failure to make reasonable accommodations for a qualified individual with a disability is a form of actionable discrimination under the ADA. *See* 42 U.S.C. § 12112(b)(5)(A). "To establish a *prima facie* case for disability discrimination, a plaintiff must produce sufficient evidence to permit a jury to find that she: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Lewis v. City of Union City*, 877 F.3d 1000, 1009 (11th Cir. 2017). A plaintiff also must prove that there is a reasonable accommodation that would allow her to perform her job. *Willis v. Conopco, Inc.*, 108 F.3d 282, 284–86 (11th Cir. 1997).

Here, whether Ms. Smith is disabled within the meaning of the ADA turns on whether she has "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A). The ADA defines "major life activities" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42. U.S.C. § 12102(2)(A).  According to Ms. Smith, her condition causes her knee pain which results in difficulty walking when she is experiencing a flare-up.  (Doc. 1, ¶¶ 26, 28).  Ms. Smith's condition affects a major life function, walking, and the ADA's definition of disability is broad enough to cover episodic conditions like Ms. Smith's.  *See* 42 U.S.C. § 12102(4)(D).  But the plaintiff bears the burden of offering evidence to support a finding that the condition substantially impairs the major life function at issue; it is not enough for the plaintiff to show that she suffers from a physical impairment.  *Lewis*, 877 F.3d at 1010.

Ms. Smith indicates that she was suffering from a flare-up on the day that Ms. Fout asked to meet with her regarding the incident with Ms. Pierce.  (Doc. 1, ¶ 26).  Ms. Smith, however, does not offer "evidence of the severity, frequency, and duration of these episodes."  *Lewis*, 877 F.3d at 1010.  The Court accepts that Ms. Smith suffers from a condition that at least occasionally impairs her ability to walk, but Ms. Smith has not offered evidence from which a jury could conclude that her condition substantially limits her ability to walk or that it prevents her from performing the demands of her former job.  As such, Ms. Smith has not satisfied the first element of her prima facie case.

Even were the Court to assume that a reasonable fact finder could find that Ms. Smith suffers from a substantial physical impairment on the basis of her

verified complaint alone, Ms. Smith faces difficulties proving that the defendants discriminated against her on the basis of her disability. Ms. Smith alleges that the defendants discriminated against her by failing to grant her request for an accommodation. If Ms. Smith is qualified for her job, an issue which the parties do not contest, then the ADA requires the defendants to provide her with a reasonable accommodation for her disability, so long as Ms. Smith requested one. *See Frazier-White v. Gee*, 818 F.3d 1249, 1256 (11th Cir. 2016) ("an employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal quotations omitted). However, "an employer is not required to accommodate an employee in any manner in which that employee desires." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). An "accommodation is 'reasonable' and necessary under the ADA . . . only if it enables the employee to perform the essential functions of the job." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007).

The Court accepts that Ms. Smith's need to see a doctor on the day of the scheduled meeting was due to her condition. Still, the Court is not persuaded that, by informing Ms. Fout that she would not attend the meeting, Ms. Smith was requesting an accommodation under the ADA. Ms. Smith's desire to see a doctor on this occasion does not necessarily implicate her ability to perform the essential functions of her position. Although frequent absences necessitated by medical

treatment could raise a question of Ms. Smith's ability to perform her duties, that issue does not arise here. Instead, the limited record before the Court indicates that Ms. Smith's desire to leave work to see a doctor on this occasion was an isolated incident. Neither Ms. Smith nor the defendants reference other medically-related absences or a problem with Ms. Smith's attendance. Consequently, it is unclear from the record whether Ms. Smith actually needed an accommodation or whether there was simply a scheduling conflict on the day in question.

The exchange between Ms. Fout and Ms. Smith regarding the scheduled meeting and Ms. Smith's need for treatment calls into doubt the necessity of the accommodation Ms. Smith allegedly requested. After receiving Ms. Pierce's complaint regarding Ms. Smith, Ms. Fout emailed both women to set a meeting for the next day at 1:00 p.m. (Doc. 22, p. 14). When Ms. Fout followed up with Ms. Smith by phone on the morning of the meeting, Ms. Smith informed Ms. Fout that she needed to see a doctor because of a flare-up in her condition. (Doc. 1, ¶ 26; Doc. 22, p. 16). Moments later, Ms. Smith wrote Ms. Fout an email in which she stated that she wanted to "avoid addressing [her] issues until [she] felt better," and that she "just feel[s] to [sic] bad to address" the concerns raised by Ms. Pierce. (Doc. 22, p. 18). The email does not reference a doctor's appointment. Ms. Fout replied to Ms. Smith stating that the issue could not wait and that "[u]nless you specifically have a doctor's appointment at 1:00, we need to meet today. It will not

take long and I hope we can get things cleared up." (Doc. 22, p. 18). Ms. Smith left the library prior to the meeting and without responding to Ms. Fout's email.

Ms. Smith's claim might be stronger if she could show that a scheduled doctor's appointment conflicted with the meeting, but she does not offer evidence that such a conflict existed. Ms. Smith also does not expressly argue in either her complaint or her response to the defendants' motion that her doctor's appointment conflicted with the meeting. The process of finding a reasonable accommodation is not one-sided; it involves an interactive exchange between the parties through which they determine what accommodation is necessary to allow a disabled person to continue performing the necessary functions of the job. *See* 29 C.F.R. § 1630.2(o)(3). To the extent Ms. Smith needed an ongoing accommodation for her disability, she did not engage in that process when she left the library without responding to Ms. Fout's email. Ms. Smith has not shown that the defendants denied her a reasonable accommodation, and her claim for disability discrimination fails for this reason. Therefore, the Court grants the defendants' motion for summary judgment with respect to Ms. Smith's ADA claim.

### d. Ms. Smith's Claim for Denial of Her FMLA Rights

Ms. Smith states that she asked Ms. Fout about taking "FMLA leave" to care for her (Ms. Smith's) hospitalized father on July 30, 2014. (Doc. 1, ¶ 31). Ms.

Fout placed Ms. Smith on administrative leave the following day "[b]efore [Ms. Smith] could execute any necessary paperwork" to take FMLA leave. (Doc. 1, ¶¶ 31–33, 62). Ms. Smith argues that Ms. Fout's decision to suspend her was due in part to the fact that Ms. Smith requested FMLA leave and that the suspension denied Ms. Smith the benefit of FMLA leave. (Doc. 1, ¶ 40; Doc. 34, ¶¶ 10, 11). The defendants dispute whether Ms. Smith in fact requested FMLA leave. (Doc. 21–1, p. 17).

The FMLA provides eligible employees with up to twelve weeks of leave from work during a twelve month period in certain circumstances, including when the employee needs "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA permits both claims for interference with protected benefits and claims for retaliation against employees who use those benefits. *See Jones*, 854 F.3d at 1267. Ms. Smith appears to assert both types of claims in so far as she argues that her suspension interfered with her use of FMLA leave, and as she suggests that the defendants' decision to institute disciplinary proceedings against her was motivated by her request for FMLA leave. (Doc. 1, ¶ 40).

To pursue a claim for interference with rights conferred by the FMLA, a plaintiff must show "by a preponderance of the evidence that [s]he was entitled to

the benefit denied." *Jones*, 854 F.3d at 1267 (quoting *Strickland v. Waterworks and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). The plaintiff does not have to show that the employer intended to interfere with the FMLA benefit in question. *Jones*, 854 at 1267.

Here, Ms. Smith's claim for FMLA interference is closely intertwined with her retaliation theory. Ms. Smith contends that the defendants' retaliatory actions —the disciplinary proceedings and eventual termination of Ms. Smith's employment — denied her the leave she was entitled to under the FMLA. But Ms. Smith would be entitled to take leave from her employment only so long as she remained employed by the library. If the actions that prevented Ms. Smith from taking FMLA leave were legitimate, then Ms. Smith cannot claim that she was entitled to the FMLA benefit that the library's termination decision denied her. Thus, to assess the viability of Ms. Smith's FMLA interference claim, the Court first must assess the viability of her FMLA retaliation claim.

A claim of FMLA retaliation based upon circumstantial evidence, such as Ms. Smith's claim, is subject to the same *McDonnell Douglas* burden shifting framework as Ms. Smith's other claims of discrimination. *See Strickland*, 239 F.3d at 1207. A plaintiff's prima facie case consists of showing that: "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected

activity." *Strickland*, 239 F.3d at 1207. For purposes of this discussion, the Court assumes that Ms. Smith has met the first requirement. Ms. Smith had a permissible reason for taking FMLA leave. *See* 29. U.S.C. § 2612(a)(1)(C). According to Ms. Smith, she asked Ms. Fout about taking FMLA leave to care for her recently hospitalized father. (Doc. 1, ¶ 31). Although the defendants dispute whether Ms. Smith actually asked Ms. Fout about taking FMLA leave, this is a question of fact on which there is conflicting testimony. (*Compare* Doc. 1, ¶ 31 *with* Doc. 22, p. 3).

Ms. Smith's argument on the second and third prongs of the prima facie showing appears to be that the defendants instituted disciplinary proceedings against her the day after she requested leave, at least in part, because of her request for FMLA leave. Ms. Smith can meet the causation prong simply by showing that defendants' disciplinary action and her protected conduct were not unrelated, and she can accomplish this by as little as a showing that the decision-maker was aware of the protected conduct. *Jones*, 854 F.3d at 1272. Again, though the defendants dispute that Ms. Smith ever made her request to Ms. Fout, this only creates an issue of material fact. For purposes of this motion, the Court accepts Ms. Smith's testimony that she asked Ms. Fout for leave, and thus Ms. Fout was aware of the protected activity at issue. (Doc 1, ¶ 31).

Even making these assumptions in Ms. Smith's favor, she does not establish a causal connection between her protected activity and the defendants' alleged retaliation because the evidence indicates that the defendants contemplated taking disciplinary action against Ms. Smith before she requested FMLA leave. "[W]hen an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) (citing in turn *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

As discussed above, the record in this case indicates that the events which precipitated the defendants' disciplinary actions occurred before Ms. Smith requested FMLA leave. Therefore, Ms. Smith's temporal proximity evidence does not create an inference of causation without additional support. Because Ms. Smith does not offer additional evidence, she is not entitled to an inference of retaliation. And because the record demonstrates that the defendant's acted within the bounds of the law in terminating Ms. Smith, she cannot show that she was entitled to FMLA leave. Therefore, her FMLA interference claim necessarily fails as a matter of law. Accordingly, the Court grants the defendants' motion as to Ms. Smith's FMLA claims.

### e. MS. SMITH'S DEFAMATION CLAIM AGAINST MS. FOUT

Ms. Smith's claim for defamation rests on her testimony that, during Ms. Smith's disciplinary proceedings, Ms. Fout solicited unfavorable letters from Ms. Smith's co-workers and Ms. Fout informed other libraries that Ms. Smith was subject to disciplinary proceedings. (Doc. 1, ¶¶ 36, 41, 66, 67).

To establish a prima facie case of defamation under Alabama law, a plaintiff must show: "[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (quoting *Ex parte Crawford Broad. Co.*, 904 So. 2d 221, 225 (Ala. 2004)) (emphasis and internal quotation marks omitted). If a court determines that a plaintiff in a defamation action is "a public official, public figure, or limited-purpose public figure," then the plaintiff must establish by clear and convincing evidence "that the defamatory statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard to whether it was false or not." *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 333 (Ala. 2007) (citing *New York Times, Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

Whether a plaintiff is a public figure, and thus subject to the higher burden proof, is a matter of law determined by the Court. *See Ex parte Rudder*, 507 So. 2d 411, 416 (Ala. 1987). Although Ms. Smith was a public employee with certain managerial responsibilities, the Court finds that she is not a public figure for purposes of her defamation claim. The Alabama Supreme Court has defined a public official as someone who:

> hold[s] a position that would invite public scrutiny of the person holding it, apart from the scrutiny and discussion occasioned by the allegedly defamatory remarks. Furthermore, the "public office" should be one of such importance that the public has a particular interest in the qualifications and performance of the person holding that office beyond the public's general interest in the qualifications and performance of all governmental employees.

*Barnett v. Mobile Cty. Personnel Bd.*, 536 So. 2d 46, 54 (Ala. 1988).

The director of the library's children's department is not an individual whose work is likely to invite public scrutiny. Although it is desirable to have well-qualified employees in all forms of public employment, the public does not have a "particular interest in the qualifications and performance" of the children's department director at the public library. Although Ms. Smith may have had some control over her own department, there is no evidence that she was charged with such responsibilities as allocating and spending public funds or that she otherwise exercised "control over[] the conduct of government affairs." *Barnett*, 536 So. 2d

at 54 (citing *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1965)). Therefore, Ms. Smith is not a public figure, and she does not have to prove actual malice to sustain her defamation claim.

Despite this lighter burden, Ms. Smith has not offered enough evidence to support her defamation claim. Although Ms. Fout may have caused needless embarrassment to Ms. Smith when she told other libraries that Ms. Smith was subject to disciplinary proceedings, such a statement was not defamatory because it was truthful. Ms. Smith was in fact subject to disciplinary proceedings by the Homewood Public library, and "[t]ruthful statements cannot, as a matter of law, have a defamatory meaning." *Bole*, 103 So. 3d at 51 (quoting *Fed. Credit, Inc. v. Fuller*, 72 So. 3d 5, 10 (Ala. 2011)). Therefore, Ms. Fout's statements to other libraries cannot sustain Ms. Smith's defamation claim.

Ms. Smith's defamation claim fares little better to the extent she bases it on Ms. Fout's solicitation of negative feedback from other library employees during Ms. Smith's disciplinary proceedings. First, Ms. Smith says only that "[Ms.] Fout added letters of negative reports from other library employees." (Doc. 1, ¶¶ 36, 66). [10] Ms. Smith does not testify that her co-workers' reports were false. Even if

---

[10] The Court is not certain that the facts as stated by Ms. Smith satisfy the publication element of defamation. A plausible reading of her complaint is that the letters in her file where published to the Library Board as part of the process of appealing the termination decision. Even if the statements were published in this manner, the statements arguably may be subject to qualified

the Court assumes that Ms. Smith means to imply that her co-workers' reports were both negative and false, Ms. Smith has not explained what her co-workers reported or how their reports cast her in a defamatory light. Because Ms. Smith does not testify as to what the defamatory statements were, a reasonable juror would not have sufficient evidence from which to conclude that one of Ms. Smith's co-workers defamed her.

An additional difficulty for Ms. Smith is that she brings her defamation claim against Ms. Fout only, although Ms. Fout did not make the defamatory statements. Although Ms. Fout could have defamed Ms. Smith by republishing false statements, Ms. Fout could be held liable only if she "knew at the time when the statement was published that it was false, or acted in reckless disregard for its truth or falsity." *Lovingood v. Discovery Comm., Inc.*, 5:14–cv–00684–MHH, 2017 WL 3268951, at *4 (N.D. Ala. Aug. 1, 2017). Because Ms. Smith has not offered evidence of the false statements made by her co-workers, a reasonable juror would not have sufficient evidence to conclude that Ms. Fout was aware of or recklessly disregarded the falsity of those statements. Therefore, Ms. Smith has not created a genuine issue of material fact as to her defamation claim, and the Court grants the defendants' motion with respect to this claim.

privileged as the defendants claim. *See Barnett*, 536 So. 2d at 53; (Doc. 21–1, p. 19). The Court need not reach this issue given the more fundamental deficiencies with Ms. Smith's evidentiary showing.

## IV. CONCLUSION

For the reasons explained above, the Court grants the defendants' motion for summary judgment as to all of Ms. Smith's claims. The Court will enter a separate order closing this case.

**DONE** and **ORDERED** this April 30, 2018.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE